Burkett, J.
It is contended by counsel for defendants in error, that the place in the lake where the nets were located is not within the jurisdiction of this state, but is part of what is usually known as the high seas. The contention is not sound. The northern boundary of the state is the line between the United States and Canada, as fixed by treaty and established by act of congress. 5 U. S., Statutes at Large, 49; 8 U. S. Statutes at Large, 274-276.
The extension of admiralty jurisdiction to the Great Lakes by a judicial change of construction by the supreme court of the United States, did not have the legal effect to change the northern boundary of this state as theretofore fixed and established by congress. As to change of construction, see Waring v. Clarke, 5 Howard, 441; Propeller Genesee Chief v. Fitzhugh, 12 Howard, 443.
The nets in question are claimed to have been seized by authority of section 6968, Revised Statutes, as amended February 17, 1892, 89 O. L., 26. So much of that section as is applicable to Lake Erie is as follows :
“No person shall draw, set, place, locate or maintain any pound-net, seine, trap or fish net in Lake *63 Erie, * * * from the fifteenth day of June to the tenth day of September, inclusive. No person shall set, place, locate or maintain, or catch fish with a gill-net in any of the waters of the state, except in Lake Erie. No person shall set, place, locate or maintain any fish-net on any of the reefs in Lake Erie. No person shall set, place, locate or maintain in Lake Erie any portable fish-net within one-half mile of any stationary fish-net or lead thereof. No person shall set, place, locate or maintain any net whatever within one-half mile of the mouth of any river or creek flowing into Lake Erie. * * * No person shall draw, set, place, locate or maintain any fish trap, pound-net, seine of any device, for catching fish as in this section forbidden; and any nets, seines, pound-nets or other devices for catching fish, set, placed, located or maintained in violation of the provisions of this section, shall be confiscated wherever found, and the same shall be sold to the highest bidder, at public outcry, at a place to be selected by the fish commissioners, and the proceeds derived from such sale shall be placed to the credit of the fish and game fund, and subject to the warrant of such commissioners. * * * Any person convicted of a violation of any of the provisions of this act shall be fined for the first offense not less than twenty-five dollars nor more than one hundred dollars, and in case of neglect or refusal to pay said fine, be imprisoned in the county jail not less than thirty days; and for the second or any subsequent violation of this act, shall be fined not less than fifty dollars nor more than five hundred dollars, and in default of payment of fine and costs shall be imprisoned in the county jail not less than sixty days; and all fines collected under this act shall go to the county fish and game fund in the county wherein the offense was committed, unless otherwise directed and ordered by the fish and game commissioners of this state. And it is hereby made the duty of the wardens and assist *64 ant wardens of this state to prosecute all violations of this act in connection with- the prosecuting attorneys of the counties wherein such offense shall have been committed, and such prosecuting attorney shall be entitled to the same fees as are now allowed by law for the collection of forfeited bonds. * * *”
This section was again amended and supplemented by the acts of April 27, 1896, 92 O. L., 332 and 384, but as the nets in question were seized in July, 1895, this case must be determined by the statute as it then stood.
It will be noticed that the act as it then stood does not declare nets used in violation of it a public nuisance, to be abated and destroyed wherever found, nor words to that effect. The provision of the act is as follows: “And any nets, seines, pound-nets or other devices for catching fish, set, placed, located or maintained in violation of the provisions of this section, shall be confiscated wherever found, and the same shall be sold to the highest bidder at public outcry at a place to be selected by the fish commissioners, and the proceeds derived from such sale shall be placed to the credit of the fish and game fund and subject to the warrant of such commissioners.”
While the act provides that the nets shall be confiscated wherever found, it fails to provide expressly who shall confiscate them, and fails to provide any legal proceedings for their confiscation. The prosecution provided for in the section is against those who violate the provisions of the act, and provides for their punishment by fine and imprisonment, but nothing is provided as to adjudging the confiscation of the nets. The intent of the general assembly seems to have been that the fish commissioner should seize and confiscate such nets wherever found, without any legal proceedings whatever; and that he should sell the same at public outcry at such place as he should select, and place the proceeds to the credit of the fish and game fund.
*65 Confiscation implies a seizure, with or without legal process in the first instance, followed by a legal proceeding in a court of competent jurisdiction wherein the parties interested may be heard and have an opportunity to defend, and wherein the property is adjudged to be confiscated and ordered to be sold according to law.
While the seizure may be made in the first instance by an officer of the law doing no unnecessary damage, the confiscation must be made by the judgment of a court having jurisdiction of the subject matter.
This section gives the right of confiscation, but fails to provide a legal proceeding by which the confiscation may be adjudged, and there being no other statute providing a proceeding in such cases, it attempts to take and sell private property and place the proceeds in the public treasury without any process of law. The section is therefore in conflict with article 1, section 16, of our constitution, which provides as follows: “All courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law; and justice adminstered without denial or delay.”
To confiscate is to seize and appropriate to the use of the state. It is also defined as follows: “To appropriate private property as forfeited to the public use or treasury, especially because of the wrong-doing of the owner.” In this sense it is in the nature of a fine imposed upon an offender, which cannot be done without due process of law. It is, in legal effect, taking private property for the use of the public without compensation and without process of law.
The confiscation act of congress, passed July 17, 1862, 12 U. S. Statutes at Large, 589, provides for proper proceedings in a court of competent jurisdiction to adjudge and order the confiscation and sale *66 of the property seized. So in confiscations for violations of the revenue laws, there is a provision for legal proceedings.
Proper legal proceedings are always necessary to adjudge a forfeiture or confiscation, and to permit officers or private persons to seize, sell or appropriate private property without legal proceedings, under a claim of confiscation, would be inconsistent with the principles of constitutional government, and would .soon lead to fraud, corruption, oppression and extortion.
Such statutes to be constitutional should not only provide the right of confiscation, but should also provide the remedy, and then such remedy would be exclusive. Commissioners v. Bank, 32 Ohio St., 194.
The act being unconstitutional, it can afford no protection to the fish commissioner and owner of the tug for seizing and taking away the nets. They were wrong-doers from the beginning, the same as if the act had never been passed, and they were liable to the owners of the nets for their value, and the judgment against them is right.

Judgment affirmed.